DOBBINS v. UNITED STATES.

No. 9152.

United States Court of Appeals
District of Columbia.

Argued March 26, 1946.

Decided June 28, 1946.

Writ of Certiorari Denied Oct. 14, 1946.

See 67 S.Ct. 99.

Messrs. James A. Cobb and George E. C. Hayes, both of Washington, D. C., for appellant.

Mr. Sidney S. Sachs, Assistant United States Attorney, of Washington, D. C., with whom Messrs. Edward M. Curran, United States Attorney, and Ray L. Jenkins, Assistant United States Attorney, both of Washington, D. C., were on the brief, for appellee.

Before GRONER, Chief Justice, CLARK and PRETTYMAN, Associate Justices.

CLARK, Associate Justice.

This is an appeal from a judgment and sentence based upon a jury verdict finding the defendant guilty of the crime of embezzlement.[1] The indictment contained 69 counts, 23 under each of three crimes charged, embezzlement, false pretense,[2] and larceny after trust.[3] At the conclusion of the Government's case the counts relating to false pretenses and larceny after trust were stricken.

It appears from the record that appellant came into possession of funds alleged to have been wrongfully converted while serving as attorney for Mrs. Grace L. Jones, substitute committee of the estate of her father, an adjudged lunatic. Evidence for the prosecution disclosed that appellant received from Mrs. Jones, in her capacity as committee, some 23 monthly retirement checks payable to her father. Appellant gave Mrs. Jones reason to believe that the proceeds of these checks, less a small monthly cash allowance paid to her for use in behalf of her father, were being deposited in the Industrial Bank in her name as committee.[4] It was shown that some of the checks entrusted to him were cashed in liquor stores and restaurants, and others were deposited to his personal account at the Industrial Bank.

The prosecution introduced two annual reports, prepared in appellant's office, signed by Mrs. Jones and filed with the Auditor for the District Court. Each of these reports falsely stated that substantial funds were on deposit in the Industrial Bank in Mrs. Jones name as committee. It was shown that in fact the bank had never had an account so designated. Testimony by appellant's secretary showed that the basic information on the first report filed with the Auditor was furnished by appellant.

The Government also introduced testimony tending to show that appellant was in poor financial condition during the period in which the alleged embezzlement took place, and that he departed from Washington in November of 1944 for an extended period under circumstances suggesting that he may have known that the Auditor's office would be examining the Jones account.

We shall review the points raised on this appeal in the order of trial chronology. Appellant first urges that the trial court should have directed a verdict for the defendant at the close of Government's opening statement. This argument is based on the prosecutor's failure to state that the Government would prove a *"wrongful conversion"* or *"fraudulent taking"*. We observe that this argument does not go to the sufficiency of the indictment. It is addressed only to the opening remarks of the prosecutor. We have not been referred to any authority, nor have we found any, which holds that the prosecution's opening remarks must be in the precise language of the indictment. Here, the indictment was admittedly good, and the opening statement on behalf of the Government set out in considerable detail the nature of the evidence upon which the prosecution would rely. The omission referred to did not

---

[1] D.C.Code 1940, § 22—1202.

[2] D.C.Code 1940, § 22—1301.

[3] D.C.Code 1940, § 22—2203.

[4] Each check was in the amount of $71.47, of which $15 was paid back to the complaining witness for use in behalf of her father. The net amount which the defendant was charged with converting totaled about $1,300.

prejudice the defendant in making his defense or entitle him to a directed verdict at that point.

Likewise, we do not think the trial court erred in refusing the defendant's motion that the Government be required to elect to place its case on one of the three crimes charged before putting in evidence. This is a matter within the discretion of the trial court and its ruling was not an abuse of that power.[5] As for any confusion which might have existed as a result of the prosecution being allowed to put in its case before making an election, we think it was well dispelled by the election at the end of the Government's case and by the instructions to the jury. There is nothing to indicate that the defense was in any way damaged by this ruling of the trial court.

Appellant urges vigorously that "the most flagrant error in this case" was the trial court's failure to rule that, where funds are voluntarily turned over to the accused, a demand for their return is necessary to support a prosecution for the crime of embezzlement. In the circumstances of this case neither the authorities nor sound reason are on the appellant's side of this point. It has been repeatedly held that a demand and refusal to pay over may be strong evidence going to make out the crime, but that such a showing is not fundamentally necessary where there is other convincing proof to support the conviction. See for example, Fullerton v. Government of the Canal Zone, 5 Cir., 8 F.2d 968, 972 (where a public officer failed to turn funds over to his successor); State v. Sterett, 160 Wash. 439, 295 P. 182; State v. Ross, 55 Ore. 450, 104 P. 596, 604, 106 P. 1022, 42 L.R.A.,N.S., 601; State v. Moyer, 58 W.Va. 146, 52 S.E. 30, 6 Ann.Cas. 344; and People v. Hopper, 274 Mich. 418, 264 N.W. 849, 850.[6]

In such cases as the one before the court the test as to the necessity for demand would appear to be not whether the funds were acquired voluntarily, but rather, whether there is either a fixed time for accounting, at which time the accused defaulted, or some other convincing proof to uphold the charge of wrongful conversion. Here there is considerable question as to the weight which can be attached to much of the government's evidence, particularly that relating to the financial condition of the defendant. However, it was shown that at the times set for accounting to the Auditor's Office the defendant caused to be filed fraudulent reports.[7] This highly significant fact, coupled with the circumstances surrounding the defendant's departure from the city, when it appears he had every reason to know that an examination of the account was in order, was ample, we think, to dispel any reasonable doubt concerning his guilt that might have been entertained by the jury. Repayment will not, of course, serve to clear the defendant. Henry v. United States, 50 App.D.C. 366, 273 F. 330; State v. Baxter, 89 Ohio St. 269, 104 N.E. 331.[8]

Essentially, appellant contends that the crime was not made out because no one asked him for the funds. To prove the crime it was necessary that the prosecution demonstrate beyond a reasonable doubt that

---

[5] See Pierce v. United States, 160 U.S. 355, 16 S.Ct. 321, 40 L.Ed. 454; Pointer v. United States, 151 U.S. 396, 14 S.Ct. 410, 38 L.Ed. 208; McNeil v. United States, 66 App.D.C. 199, 85 F.2d 698; Fulton v. United States, 45 App.D.C. 27; and Corbin v. United States, 5 Cir., 264 F. 659.

[6] In this case the court makes this analysis: " 'Such matters as concealment or its absence, refusal to pay at the time provided by contract or on demand, or demand or lack of demand, pointed out in some cases as indicating commission of crime or constituting a defense, are not to be taken as declared essentials of the offense or defense but merely as circumstances bearing upon the intent. Hanna v. Minnesota [Mut.] Life Ins. Co., 241 Mo. 383, 145 S.W. 412.' American Life Ins. Co. v. United States Fid. and G. Co., 261 Mich. 221, 246 N.W. 71, 73."

[7] As to the effect of a failure to account see State v. Bickford, 28 N.D. 36, 147 N.W. 407, 420, Ann.Cas.1916D, 140; Cf. Champion Ice Mfg. v. American Bonding and Trust Co., 115 Ky. 863, 75 S.W. 197, 198, 103 Am.St.Rep. 356.

[8] See also, 52 L.R.A.,N.S., 1019, 1023, 1028, Ann.Cas.1916C, 60.

there was a wrongful conversion by the defendant. A mere conversion will not suffice. Hence, the core of the crime, and the burden for the prosecution, is the proof of the accused's "wrongful" intention. We have previously held that: "This intent may be proved directly; or it may be inferred from the circumstances of the case as disclosed by the evidence; or it may be inferred from the nature of the conversion itself; but in all cases the inference must be deduced by the jury, and not by the court." Masters v. United States, 42 App. D.C. 350, 357,[9] Ann.Cas.1916A, 1243.

 Appellant charges that it was error for the trial court to permit the former wife of the defendant to testify as to certain events occurring during coverture.[10] To come within the privilege enunciated by the statute the communication must have been one of a confidential nature. An examination of the record discloses that some of the former wife's testimony concerned the defendant's financial affairs before they were married, other portions of the testimony relate to transactions, or prospective transactions which by their nature required communication to third persons. We have failed to find anything in the record that can be properly classified as a "confidential" communication in the sense required by a reasonable interpretation of the statute.

 Appellant further contends that the trial court erred in admitting evidence which reflected on the defendant's financial condition prior to and after the time of the indictment. The argument is without merit. The testimony complained of was reasonably related to the dates charged in the indictment. We think our holding on a similar point in the Ambrose case applies here. Ambrose v. United States, 45 App. D.C. 112.

 The objections raised by appellant concerning the instructions which the trial court gave and refused to give, are not convincing. We have examined the instructions of the trial court and have not found them in error as to the law of embezzlement, or in regard to the jury's duty

in considering such evidence as was presented, and the applicability of the law of fugitivity as it related to the defendant in this case. Similarly, we find from the record that the defendant was not prejudiced by the court's handling of an inquiry addressed to the bench by a member of the jury during the course of the trial. Not only did the court at that time admonish the jurors to hold their questions until the completion of the trial, but counsel for the defense agreed with the court on the procedure to be followed in dealing with this inquiry.

Affirmed.

---

[9] See also Hancey v. United States, 10 Cir., 108 F.2d 835, 837, and cases cited.

[10] D.C.Code 1940, § 14—307.